(No. 26819.—■)

HARRY E. BURKHOLDER *et al.*, Appellants, *vs.* THE CITY OF STERLING *et al.*, Appellees.

*Opinion filed January 19, 1943.*

JACOB CANTLIN, for appellants.

SHELDON & BROWN, for appellees.

Mr JUSTICE MURPHY delivered the opinion of the court:

This cause comes to this court by direct appeal on the certificate of the trial judge that the validity of an ordi-

nance of the city of Sterling is involved and the public interest requires that it be passed upon by this court. In 1931 the city of Sterling adopted a comprehensive zoning ordinance which divided the city into industrial, commercial and residential zones. This ordinance will be referred to as No. 603. In 1941 an amendatory ordinance, which is the one involved in this proceeding, was adopted. It is referred to as No. 752. The effect of the latter ordinance was to change the restrictions on use as to certain blocks on East Third street, thereby transferring them from a residential to a commercial zone.

The proceeding leading to the adoption of ordinance No. 752 was originated by a number of persons who owned property in the involved area. They presented a petition to the city council asking for the change, and, in accordance with the requirements of the original zoning ordinance, No. 603, a hearing was had and a number of other property owners appeared and protested the change. The several owners of property in the area involved were about evenly divided for and against the proposal. The committee before whom the hearing was had recommended to the council that the change be made. The recommendation was accepted and ordinance No. 752 was adopted.

Plaintiff-appellants instituted the instant suit in which they prayed for temporary injunction enjoining the city officials from placing ordinance No. 752 in operation until there could be a hearing on the merits. They also prayed that the amendatory ordinance be declared invalid and as grounds therefor urged it was unreasonable, arbitrary and bore no rational relationship to the public health, morals, safety or public welfare of the city. After a hearing of evidence the complaint was dismissed for want of equity and this appeal is from that decree. The defects of the ordinance as alleged in the complaint are renewed here as grounds for reversal.

The street upon which the change was made is East Third street, which extends in an east and west direction and intersects Locust street. The evidence shows that the

intersection of the two streets is the center of commercial business activity in the city. By ordinance No. 603, several blocks in each direction from the intersection were zoned for commercial purposes. Such zoning included both sides of East Third street east from the intersection a distance of four and one-half blocks. Beyond this both sides of East Third street for a distance of five and one-half blocks were zoned for residential purposes. This area of five and one-half blocks, except for one block, was included in ordinance No. 752. The excepted block was changed from residential district to a commercial district by another ordinance which is not involved in this proceeding. The effect of the original zoning ordinance and ordinances No. 752 and No. 751 was to zone both sides of East Third street from the intersection of Locust street east ten blocks for commercial purposes. The area on each side of the street was one-half block in width.

Adopting ownership of tracts as a unit, there were approximately seventy-three units included in ordinance No. 752. These were about evenly divided between the north and south sides of the street. The use of the blocks in this area has been predominantly residential, there being approximately thirty-two places of residence on the south side of the street and twenty-five on the north. Units used for commercial purposes prior to the adoption of the zoning plan of 1931 have not been changed and continue to be used for the original purposes. They consist of two filling stations and three grocery stores. Subsequent to the adoption of ordinance No. 603, additional units were devoted to commercial purposes. They consisted of enterprises such as a barber shop in the basement of a residence, a beauty parlor in a part of a residence, a music studio and small repair shops and a tin shop operated in small buildings to the rear of houses used exclusively for residence purposes.

East Third street formed the chief connection between the main commercial area and two smaller commercial

areas farther east, one of which was located on East Third street and the other a block north. State and Federal routes are routed over East Third street. One State route had been relocated on another street at the time of the hearing. However, by actual count on certain specified days, the traffic on East Third street continued heavy for a city with the population and industrial activity of Sterling. It clearly appears that East Third street was one of the main thoroughfares of the city.

During the ten-year period following the adoption of ordinance No. 603, the city enjoyed a substantial growth, its industries were expanded, its population increased, its commercial activity became greater and many new houses were erected. Most of the newly-constructed residences were located to the north and northeast of the area involved. There had not been any appreciable number of residences constructed in the area involved on East Third street within the quarter of a century preceding the adoption of the amendatory ordinance.

The evidence shows that within the commercial zone established by ordinance No. 603, there are a number of vacant buildings adaptable to commercial purposes and unimproved properties upon which buildings could be erected for commercial uses. Plaintiff-appellants contend this surplus of buildings and commercial sites establishes the lack of public demand for the expansion of commercial enterprises of the city and that without such a demand it can not be said the adoption of ordinance No. 752 was in the interest of the public good. It must be recognized that in any city the size of the city of Sterling, there are vacant sites located within an area zoned for a particular purpose which for various reasons are not available or acceptable for such zoned use. In such case it becomes a matter for the city council to determine whether the restrictions limiting the use of property to residential purposes shall be lifted so as to bring it into the commercial zone and into competition with the property already in

such zone but not presently used for that particular purpose. In such case the action of the council will not be interfered with by the courts so long as the action is not unreasonable or arbitrary and the action taken bears some relationship to that which is for the best interests of the city.

It has been repeatedly stated by this court that it will not constitute itself a zoning commission and that all questions relative to the wisdom or desirability of particular restrictions in a zoning ordinance rest with the legislative bodies creating them and that a finding will not be disturbed where there is ground for a legitimate difference of opinion concerning the reasonableness of a particular ordinance. (*Harmon* v. *City of Peoria,* 373 Ill. 594; *Evanston Best & Co., Inc.* v. *Goodman,* 369 id. 207.) It is not the province of courts to interfere with the discretion of the legislative body in the absence of a clear showing of an abuse of a discretion vested in them. (*Morgan* v. *City of Chicago,* 370 Ill. 347; *Minkus* v. *Pond,* 326 id. 467.) Where the advisability of restricting a particular area for a particular use is debatable, this court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question. *Forbes* v. *Hubbard,* 348 Ill. 166; *Morgan* v. *City of Chicago, supra.*

From a review of the facts, it is obvious that the advisability of adopting ordinance No. 752 was debatable. The property owners who were directly concerned in the matter were about evenly divided. The committee that conducted the first hearing, and the city council, approved the rezoning ordinance and the chancellor confirmed their action. Under such circumstances this court can not do otherwise than affirm the decree. The decree is affirmed.

*Decree affirmed.*