## SINCLAIR REFINING CO. v. CITY OF CHICAGO.

No. 9876.

United States Court of Appeals
Seventh Circuit.

Dec. 2, 1949.

Rehearing Denied Dec. 23, 1949.

Benjamin S. Adamowski, Corp. Counsel, L. Louis Karton, Sydney R. Drebin, Assts. Corp. Counsel, Chicago, Ill. (L. Louis Karton, Chicago, Ill., of counsel), for appellant.

Sturtevant Hinman, Donald K. McIntosh, Chicago, Ill., Edward H. S. Martin, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

KERNER, Circuit Judge.

The sole question in this appeal is whether a certain amendatory zoning ordinance of the city of Chicago, as applied to plaintiff's property, is so arbitrary and unreasonable as to render it void.

Plaintiff, a Maine corporation, is the owner of lots 1 and 2 in block 24 in Ravenswood, a subdivision in the city of Chicago. Lot 1 is located at the southeast corner of Montrose and Hermitage Avenues. It is improved and operated as a gasoline filling station. Lot 2, immediately south of lot 1, is improved with a frame residence. In 1923 the city of Chicago enacted a comprehensive zoning ordinance. Plaintiff purchased lot 1 in 1940 and lot 2 in January, 1946. At the time of the purchase of the respective lots, lot 1 was zoned for commercial purposes, and lot 2 for apartment house use. In March, 1946, lot 2 was rezoned for business use, and thereafter, on July 16, 1947, the City Council passed an ordinance zoning the south 42½ feet of lot 2 for apartment use. Under the terms of that ordinance the buildings that may be erected upon the south 42½ feet of lot 2 and the uses to which they may be devoted are restricted to residential and apartment uses, while the north 7½ feet are zoned for commercial purposes.

The gist of plaintiff's complaint is that lot 1, even with the addition of the north 7½ feet of lot 2, is too small in area for operation to the best advantage of a gasoline filling and greasing station; that in purchasing lot 2 plaintiff anticipated it would be zoned for business; and that the City Council, in the passage of the ordinance of July 16, 1947, acted unreasonably, arbitrarily, and not in the interests of the general public or the public health, safety and convenience, morals or welfare of the inhabitants of the city of Chicago.

The cause was tried by the court without a jury. On the hearing, the court heard the testimony of witnesses as to the character of the property in the vicinity of the lots. On behalf of plaintiff there was evidence that although lot 1 had been used as a filling station since 1928, in its present condition it is not suitable for the conducting of the station to the best advantage, and that plaintiff intends to improve the station by the erection of a modern station on both lots which would increase the assessed value of the lots about 200%.

On behalf of defendant there was testimony to the effect that the neighborhood south of Montrose on Hermitage Avenue was solidly apartments and residences, and that if lot 2 were improved as contemplated by plaintiff, it would diminish the value of the property south of lot 2. C. R. Steelberg testified that a Bible Institute and Seminary was located immediately south of lot 2, and that when the Bible Institute purchased its property in September, 1944, lot 2 and the other lots south of lot 2 had been zoned for residential or apartment house use. He also testified that plaintiff's station now has no driveway on Hermitage Avenue, and that if plaintiff erected the contemplated station with a driveway or driveways on Hermitage Avenue, the traffic would be closer to the Seminary and the students residing therein, and the possibility of injuring them would be increased.

Based upon the record thus made, the court held that the ordinance was null and void on the ground that the City Council, in passing the ordinance on July 16, 1947, acted unreasonably, arbitrarily and not in the interests of the general public or the public health, safety, or welfare of the inhabitants of the city of Chicago.

Plaintiff asserts that the ordinance was passed solely for the purpose of excluding plaintiff from the enjoyment of its property for which it was naturally and properly adapted, and makes the point that the amendatory ordinance as applied to its property, offends the Federal and State constitutional guarantees of due process. On the other hand, defendant claims that the ordinance is reasonable, and not in contravention of any constitutional provision.

■■ The principles applicable to cases of this nature have been considered by many courts. From these cases [1] we learn that the owner of property possesses the right to use his property as he desires. This right, however, is not unqualified, but must yield to the higher and greater right of the interests of the people, and constitutional guarantees of private rights are subject to the qualifications that they may be cut down by government agencies acting under a proper exercise of the police power. The police power of the State is that power required to be exercised in order to effectually discharge within the scope of the constitutional limitations its paramount obligation to promote and protect the public health, safety, morals, comfort and general welfare of the people. Hence, in the use of his property according to his desires, the owner must not endanger the safety, health, comfort, or the general welfare of the people.

The first section of the City Zoning Act, Ill.Rev.Stat. 1947, c. 24, § 73—1 recites that the zoning power is granted to municipal authorities "to the end that adequate light, pure air, and safety from fire and other dangers may be secured; that the taxable value of land and buildings throughout the municipality may be conserved, that congestion in the public streets may be lessened or avoided, and that the public health, safety, comfort, morals, and welfare may otherwise be promoted * * *."

■ Municipalities may adopt zoning ordinances as an exercise of their police

1. State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; Phipps v. City of Chicago, 339 Ill. 315, 171 N.E. 289; Metropolitan Life Ins. Co. v. City of Chicago, 402 Ill. 581, 84 N.E.2d 825; Zadworny v. City of Chicago, 380 Ill. 470, 44 N.E.2d 426; Forbes v. Hubbard, 348 Ill. 166, 180 N.E. 767; Offner Electronics, Inc., v. Gerhardt, 398 Ill. 265, 76 N.E.2d 27; Du Page County v. Henderson, 402 Ill. 179, 83 N.E.2d 720; 2700 Irving Park Bldg. Corp. v. City of Chicago, 395 Ill. 133, 69 N.E.2d 827; Harmon v. City of Peoria, 373 Ill. 594, 27 N.E.2d 525; Rothschild v. Hussey, 364 Ill. 557, 5 N.E.2d 92; People ex rel. Miller v. Gill, 389 Ill. 394, 59 N.E.2d 671; Mercer Lumber Companies v. Village of Glencoe, 390 Ill. 138, 60 N.E.2d 913; Neef v. City of Springfield, 380 Ill. 275, 43 N.E.2d 947; City of Aurora v. Burns, 319 Ill. 84, 149 N.E. 784; Johnson v. Village of Villa Park, 370 Ill. 272, 18 N.E.2d 887; and Village of Western Springs v. Bernhagen, 326 Ill. 100, 156 N.E. 753.

power and thereby impose a reasonable restraint upon the use of private property. Zoning involves a consideration of the community as a whole and a comprehensive view of its needs. True, no general zoning plan can be inaugurated without incurring complaints of hardship in particular instances. But the individual who may be restricted in the use of his property is not the only person to be considered. A purchaser may rely upon a classification which exists in the vicinity when he purchases his land, and may expect that that classification will not be changed so long as the basis of public welfare remains the same. It is also true that zoning is regulation by districts and not by individual pieces of property. The classification, as a whole, must be fair, but an absolute identity of treatment of particular parcels of land is not required. All that is required is that the power be reasonably exercised. The question is not whether the court can approve the ordinance under review, but whether it can pronounce it an unreasonable exercise of power, having no rational relation to the public health, morals, safety or general welfare. In determining whether the invasion of property rights under a purported police power is reasonable, the character of the neighborhood, the use to which nearby property is put, and the extent to which property values are diminished by the provisos of the zoning ordinance, must be given consideration.

A zoning ordinance passed in the exercise of the police power is clothed with a presumption in favor of its validity. It will not be disturbed where there is ground for a legitimate difference of opinion concerning its reasonableness, and the burden of showing it unreasonable and oppressive rests upon the party attacking it. But courts do not inquire into the facts or reasons which motivate the passage of a zoning ordinance, and all questions relative to the wisdom or desirability of particular restrictions in the ordinance rest with the legislative body creating it. When the reasonableness of an ordinance is challenged, the question for the court is not whether it thinks the ordinance wise, but whether the ordinance has a rational relation to public health, safety or general welfare.

In this case it is undisputed that plaintiff purchased lot 2 at a time when that lot was zoned for apartment or house use, and that the immediate neighborhood south of lot 2 was devoted and zoned for residential use. There was no evidence that the neighborhood, since the passage of the ordinance of 1923 zoning lot 2 for apartment house use, had changed to such an extent that the application of the ordinance of July 16, 1947 to the south 42½ feet of lot 2 did not tend to promote the public health, safety or general welfare of the people. All that plaintiff has shown is that lot 1 as now improved is not adequate for the conducting of a filling station, and that if plaintiff were permitted to erect a modern station on both lots, the assessed value of the lots would be increased. In this state of the record it cannot be said that the particular restriction, as applied to the south 42½ feet of lot 2, is not a proper exercise of the police power in that it does not have a substantial relation to the safety and general welfare of the people in the vicinity of the lot. There were no facts warranting a finding that plaintiff's property rights have been invaded.

The judgment is reversed and the cause remanded to the District Court with instructions to dismiss the complaint.